Belle L. Lyons, Executrix,
vs.                                 Eq. No. 10442.
Ralph B. Taylor, Executor

Belle L. Lyons, Executrix,
vs.                                 Eq. No. 10482.
Ralph B. Taylor, Trustee

November 6, 1931.

BLODGETT, P. J.  Heard upon bills and answers and testimony.

The complainant is executrix of will of Marion A. Whitford. An action at law is pending between the same parties in this Court to recover the unpaid balance of a legacy of $3000 bequeathed to Marion A. Whitford by will of William E. Whitford.

The relief asked for in equity is the cancellation of two receipts given by Marion A. Whitford to said respondent, one for $1,594.52, dated August 22, 1927, the other for $650, dated August 5, 1929.

Marion A. Whitford was at the time of her death, February 17, 1930, nearly 79 years old. Her husband, Frank P. Whitford, died in 1911. February 18, 1899, Frank borrowed $1,594.52 from one William Barton, at that time trustee under the will of Silas B. Whitford. This sum was lent from the trust fund left under said will to said Frank, who gave a note therefor. February 1, 1893, said Frank borrowed $200 from said fund and gave his note therefor.

A succession of trustees administered said trust and this respondent was appointed September 17, 1922.

July 10, 1926, William E. Whitford died, leaving a will, and said respondent was named and qualified as executor. Under the will of said William there was a cash legacy of $3000 to said Marion. August 9, 1927, said Taylor wrote a letter to said Marion (a copy being attached to each bill of complaint). In this note he told her he was deducting $200 from her income from the estate of Silas B. Whitford, in payment of her husband's $200 note of February 18, 1889; and enclosed the note marked "paid." He further wrote: "The other note of $1,594.52 can be paid by whatever arrangement most satisfactory to you. You could pay it when you receive your legacy from the estate of William E. Whitford." The letter further stated that the reason for deducting the $200 from her income and the request for payment of the note for $1,594.52 was that the same were paid to her husband from a trust fund which it was the duty of a trustee to keep intact.

Ralph B. Taylor, the respondent, in his testimony (p. 56 of the record) testified that Marion A. Whitford came to his office some two weeks after receipt of his letter of August 9, 1927, accompanied by a woman whom he did not know.

Against the objection of counsel for complainant, respondent testified that at this interview he related to Marion a conversation he had had with William Whitford (the person leaving the legacy of $3000 to Marion) in which said Whitford said: "That so long as he (said Whitford) lived, I needn't worry about the payment of these notes, that if either Frank or Marion died first, he would make good on the notes, but in the event that they outlived him, he made provision in the (his) will covering their interest, and after first paying the notes, they would have money besides to do what they saw fit."

Taylor further testified (p. 57): "I explained it to Mrs. Whitford. At the time she said she understood. She (Mrs. Whitford) said: "Didn't he leave an amount of $1,500?" I said, "Yes, he left $3,000. Do you understand that?" She said, "I understood these notes had to be paid." I said, "You don't have to pay it now; if you want this money, I can make arrangements to take it out of your next installment." She said, "It is due the estate. I want to pay it." I said,

"You can do as you see fit." I gave her a check. I had to get a receipt for the files. She endorsed the check. It was endorsed over to the estate of Silas B. Whitford and I turned over the note for $1,500.

On these two notes of Frank Whitford to the estate of Silas B. Whitford, respondent, after the death of said Frank, deducted certain amounts from the income accruing and paid to Marion, widow of said Frank, certain sums for interest due on the said two notes, and at a subsequent time, as appears on the record, deducted the amount due on said note for $1,594 from a legacy coming to said Marion from the will of William Whitford.

The tenth paragraph of the bill of complaint alleges that the respondent in his letter of August 9, 1927, referred to above, represented to said Marion that the Court of probate having jurisdiction of the will of Silas B. Whitford held him (respondent) for the collection from her of said note for $1,594.52.

What he did write in said letter was:

"As these loans to Mr. Frank P. Whitford were taken from the principal of the estate it is the duty of the trustee to keep the principal of the estate intact, and the Court would hold the trustee responsible for any unsecured loans."

The paragraph then alleges that said Marion had never in fact rendered herself responsible for the payment of said loans and was not liable for such payment; further, that the statements contained in said letter were false, known by respondent to be false, and made with intent to deceive said Marion.

The eleventh paragraph alleges said Marion to be wholly dependent upon the income of said trust fund for her support; that she was old and feeble; that she reposed confidence in said respondent, who held himself out to her to be experienced in the handling of estates; that she relied on the statements in accepting the amounts paid her by respondent.

The twelfth paragraph alleges that said respondent, so enjoying the complete confidence of said Marion, executed a strong influence over her will and abused his fiduciary relations to gain a wrongful advantage for the estate of Silas B. Whitford, of which he was trustee, and thus wronged said Marion.

The gist of the bill is that Marion A. Whitford, while old and feeble, was induced by false representations to pay notes of her former husband which she was under no legal liability to pay.

Dr. Charles A. Deacon treated Marion in 1927. In answer to a long hypothetical question, he said: "I suppose she would have accepted it as a thing for her to do."

In answer to a question about the letter of August 9, 1927, he said: "I doubt if she could understand it."

If it is assumed from this answer that she did not understand the letter, there is certainly doubt as to whether it had any influence upon her.

Marion Whitford made a will, executed March 13, 1928, and Edwin J. Tetlow, an attorney of this Court and who drew the will and attended to its execution, testified he had no doubt at that time as to her full testamentary capacity; that Belle Lyons, who was with her at the time, did most of the talking; that under this will all the property was left to Belle Lyons; that at the time the will was talked about between them, Marion Whitford said nothing about this claim. (Claim against Taylor.)

Fred B. Whitford, a grandson of Silas B. Whitford, testified that he met Marion A. Whitford at William E. Whitford's funeral, July 10, 1926, (p. 44); that he saw her there for the first time in thirty years; that after that he called upon her once a year up to her death; that at his last call before

her death, she said she had paid Frank's note of $1,500 and she said: "The lawyer told me I needn't pay it because it was outlawed but Frank owed the money." She repeated it and used the word "we." "I am glad it is paid." "We paid the interest." "That is now over and clear."

Lena F. Anthony, with whom Marion lived for six months from June, 1926, testified to the feeble condition of Marion and to certain conversations with her relative to the matter of these two notes in which she (Marion) told her that Taylor had told her (Marion) that this bill against her husband had got to be paid.

This witness, to the mind of the Court, was not very specific and her answers were generally made to leading questions.

Another witness, Clara Goyette, and her daughter Eunice, also testified to certain conversations with Marion relative to the $3,000 legacy, in which she (Marion) told them that Taylor told her she would have to pay these bills out of such legacy. Since Taylor only saw her at his office after his letter of August 9, 1927, these conversations must have been based upon said letter.

This comprises the testimony in the matter. All the parties except respondent are connections of the Whitford family and it is a family affair.

There seems to be no question that Taylor, as trustee under the Silas B. Whitford estate, desired to keep the trust fund created intact, and with this in mind wrote the letter of August 9, 1927. Taylor's relations with Marion A. Whitford up to the time of writing this letter had been formal. As trustee and executor he had submitted to her statements as to her interest in the Whitford estate and sent her checks for such amounts as he claimed were due her, and she in turn, without any personal interview with him, cashed such checks and made no protest to him as to such statements.

It seems to be a fact from the record that Taylor never saw her personally save on two occasions, viz.: the first time at the funeral of William E. Whitford July 13, 1926, and the second time at his office, August 22, 1927.

It was the bequest to Marion under the will of William E. Whitford of $3,000 which afforded the trustee (Taylor) an opportunity to make good the trust fund created under the will of Silas B. Whitford, which fund had been depleted by the loans to Frank Whitford, husband of Marion, by a former trustee. Taylor evidently had it in mind that he personally might be held to keep said trust fund intact.

The letter from Taylor of August 9, 1927, enclosed the $200 note, marked paid, and the statement accompanying the letter, for the year 1927, showed a net income of $910.64 to Marion after deducting the $200 note therefrom. Annotations upon the back of said note for $200 disclose payments of interest up to August 1, 1917, and upon the note for $1,594.52, up to August 1, 1920, showing interest to have been credited on same after the death of Frank P. Whitford in 1911, and the testimony is that such payments were deducted from the income of Marion after the death of her husband.

The real question at issue is: "Did Taylor abuse the fiduciary relations existing between himself as trustee and the beneficiary of said trust?

Such fiduciary relations are well set forth in Sec. 956, Fourth Ed. Pomeroy's Equity Jurisprudence. See also Sections 957 and 958.

The other issues naturally follow, viz.: Did Taylor take advantage of the age and feeble condition of Marion to induce her to pay obligations of her husband which she was under no legal liability to pay, and did he make any false representations to her, he (Taylor) knowing them to be false, which the beneficiary relied upon?

The sole testimony on part of com-

plainant as to these issues is based upon statements made to certain persons by Marion when Taylor was not present, and upon the letter of August 9, 1927. Some two weeks after the receipt of this letter Marion, accompanied by another woman, called at Taylor's office. This apparently, from the record, was the only time he saw her personally in which these matters relative to the estate were discussed between them. The only testimony as to what occurred at this meeting comes from Taylor, as the other person present does not appear to contradict his direct testimony. The only direct statement on the part of Taylor which could influence the beneficiary appears in his letter of August 9, 1927, in which Taylor says:

"As these loans to Frank P. Whitford were taken from the principal of the estate it is the duty of the Trustee to keep the principal of the estate intact, and the Court would hold the trustee responsible for any unsecured loans, so I have deducted the $200 from your income and enclose the note herewith showing same to be paid."

The real question then is whether it was this statement that influenced Marion to pay an obligation which she did not owe. To reach a conclusion upon this, all the facts must be taken into consideration.

Taylor, as trustee, had no business to make such a statement to her. It was unwise and uncalled for.

Was the payment of these two notes a voluntary act on the part of Marion? She knew from the annual financial statements made to her after her husband's death that interest on these loans had been charged to her for several years. As far as the record shows she made no protest. In the interview of August 22, 1927, with Taylor, if his testimony is believed and same is uncontradicted, she said, "It (note of $1,594.52) is due the estate. I want

to pay it." Taylor said, "You can do as you see fit." Taylor further testified, (p. 59), "She did not sign any agreement with me under duress. She said she was glad to be able to pay the note. She used the word 'We.' 'We owed the money to Silas Whitford.'"

On page 71, in answer to question 125 by Mr. Greenlaw, Taylor said:

Q. 125—"Now you told her you weren't any lawyer, in referring to that $1,500?"

Ans. "Yes, certainly I told her, I said 'you can take this under advisement if you wish.'"

Q. 133—"You knew you didn't find any agreement or anything about this $1,500 note?"

Ans. "No, that was another strange thing. There was a note to Fred P. Whitford. I asked Mr. William E. Whitford and he said that was done when Mr. Barton was trustee. He said not to worry about the notes, as long as he lived, and 'if they have to be paid I will take care of them. If they survive me, that is Fred and Marion Whitford, I have made provision in my will leaving more than a sufficient amount to cover those notes, the two notes.'"

Fred P. Whitford testified to a conversation with Marion as follows:

Q. 17 (p. 44) "Ever (Marion) say anything to you about paying a $1,500 note to the trustee of the estate of Silas B. Whitford?"

Ans. "I think it was on the last time I saw her alive that she said she had paid the note—Frank's note of $1,500—and she says, 'The lawyer says I needn't pay it because it was outlawed, but Frank owed the money.' She repeated it and used the word 'we.' She said, 'I am glad it is paid. We paid the interest. Frank was once trustee.' And she said, 'that is now over and clean.' That is all the conversations we had about that."

As complainant does not attempt to recover the amount of the $200 note, the bill must be dismissed as to that note.

From the time of her husband's death in 1911, Marion knew she was paying interest on the note for $1,594.52 and such payments continued up to 1927. She had an opportunity after the letter of August 9, 1927, to consult an attorney as to her liability. Taylor told her she could do as she saw fit about paying the $1,500 note.

The Court has examined the carefully prepared brief filed in behalf of complainant and realizes that there does exist a very close question as to whether Taylor did by unadvised language in his letter of August 9, 1927, lead Marion Taylor to make a mistake in law in paying an obligation for which she was not liable, but a careful examination of the testimony discloses that for a long series of years annual accounts were rendered to her by Taylor containing deductions of interest on this $1,594.52 note which should naturally warn her that by assuming the payment of such interest she recognized that the proceeds of said notes were used for the joint benefit of her husband and herself. Her language used at the interview of August 22, 1929, would lead to the same conclusion.

The Court is also of the opinion that Taylor did not make for the purpose of influencing her any designedly false representation in such letter or at the time of the interview above.

The Court is of the opinion that complainant has not sustained the burden of proof.

Decree may be entered dismissing said bills.

For complainants: E. J. Tetlow.

For respondents: Littlefield, Otis & Knowles.